IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–02202–RBJ–KMT

GILBERT E. GARCIA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on review of the Commissioner's decision denying Plaintiff Gilbert E. Garcia's application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33 ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for recommendation and ruling upon the filing of Plaintiff's Reply Brief on March 21, 2012.

## FACTS

In December 2008, Plaintiff filed an application for DIB under Title II of the Act, alleging that he became disabled in September 2007. (Tr. 135.) The Colorado Disability Determination Services (DDS) denied Plaintiff's claim at the initial determination stage. (Tr. 65–71). *See* 20 C.F.R. § 404.906. The Administrative Law Judge ("ALJ") held a hearing in June 2010 (Tr. 24–61), and issued a decision in August 2010, in which the ALJ concluded that

Plaintiff was not disabled under the Act because other jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 22–23, Findings 10–11.) The Appeals Council declined review in July 2011. (Tr. 1–4.) This appeal followed.

## STANDARD OF REVIEW

The appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Ricketts v. Apfel*, 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record . . . ." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it is "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

> experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a

basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

## ANALYSIS

### 1.   *Whether the ALJ Applied Correct Legal Standards*

Plaintiff argues that the ALJ applied an incorrect legal standard in evaluating his impairment. The Tenth Circuit has recognized a three-step framework for evaluating a claimant's allegations of symptoms resulting from his impairments. *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The ALJ or the court "must consider (1) whether Claimant established a [symptom]-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of [symptoms]; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's [symptom] is in fact disabling." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)(dealing specifically with pain).

Plaintiff argues that the ALJ dismissed Plaintiff's subjective complaints of hearing loss without conducting the analysis required by *Luna*. Specifically, Plaintiff claims the ALJ failed to find a "loose nexus" between his "complaint of a hearing loss and the profound sensorineural bilateral hearing loss documented in [his] medical records." (Doc. No. 11 at 7.) To be sure, pursuant to 42 U.S.C. § 423(d)(5)(A), a claimant must demonstrate more than a potentially symptom-causing impairment before the ALJ must weigh all other evidence. § 423(d)(5)(A); *Luna*, 834 F.2d at 164. However, this is precisely the finding the ALJ made at the second step of the *Luna* framework: "The claimant has the following severe impairment: bilateral sensorineural

4

hearing loss." (Doc. No. 5-2 at 18.) Thus, it is clear the ALJ applied the correct legal standard and found both step one and step two of the *Luna* framework were satisfied, triggering the step three requirement that she consider all of the evidence to determine whether Plaintiff's impairment is disabling.

### 2. *Credibility Assessment and Rejected Evidence*

Plaintiff argues that the ALJ erred in evaluating his credibility and the credibility of his lay witnesses. (Doc. No. 11 at 7–10). An analysis of an ALJ's credibility findings is guided by the Tenth Circuit's opinion in *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995), where the Court stated:

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d [1125,] 1133 [ (10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability").

The record must demonstrate that the ALJ considered all of the evidence, but she is not required to discuss every piece of relevant evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–1010 (10th Cir. 1996); *accord, Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence.") (emphasis added). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the

uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton*, 79 F.3d at 1010.

Upon a review of the record, the court finds that the ALJ specifically considered Plaintiff's Function Report, Plaintiff's testimony, Plaintiff's wife's testimony, and letters from Plaintiff's former managers, Daniel Goulet and Steven Pettinelli. (Doc. No. 5-2 at 19–20.) The ALJ noted that,

> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are not consistent with the [ ] residual functional capacity assessment.

(*Id.* at 20.)

Plaintiff contends that the ALJ failed to give an explanation as to why she did not give more weight to Plaintiff's allegations regarding the effect his hearing loss had on his ability to function at work and in his daily life and the ALJ ignored the fact that Plaintiff was totally candid about his daily life. (Doc. No. 11 at 7–8.) Contrary to Plaintiff's assertion, the ALJ did consider Plaintiff's work history and earnings record. However, the ALJ also noted that Plaintiff quit his job not because of his impairment, but because he was concerned that he was going to be fired. (Doc. No. 5-2 at 20.) The ALJ also determined medical record and other evidence supported the agency's finding that Plaintiff's limitations did not preclude him from performing his "<u>readily</u> transferable skills to other jobs existing in significant numbers in the national economy." (*Id.* at 20.)

The ALJ acknowledged that Plaintiff testified that his work performance slid from an "A+" to a "C" due to his increased hearing loss and that Plaintiff described difficulties watching television, going to movies, hearing people in another room, eating out, and communicating with his grandson. (*Id.*) The ALJ considered Plaintiff's own report in January 2009 that his only difficulty was hearing, understanding, and following instructions, but that he was able to perform household chores, yard work, home repair, cooking, cleaning, shopping, driving, and handling money. (*Id.* at 19.) The ALJ considered Plaintiff's report that his hobbies included golfing, fishing, hunting, and watching sporting events on television. (*Id.* at 19.) The ALJ also considered Plaintiff's report that he could follow written instructions and spoken instructions "very well" if he understood them. (*Id.* at 20.)

The ALJ also considered a vocational evaluation performed by Joseph B. Blythe in June 2010, wherein Plaintiff reported he was able to work in quiet offices or libraries and was able to engage in telephone conversations if he was in a quiet environment and used the amplified levels on the phone. (*Id.* at 21.) Though Mr. Blythe opined that Plaintiff was unable to return to his usual and customary occupation because of his propensity to make errors during communcaiton in eveniornments with noise levels about 65 dB, the ALJ noted that Mr. Blythe's opinion regarding Plaintiff was not a medical, but a vocational, opinion on an issue reserved to the Commissioner. (*Id.* at 22.) Nevertheless, the ALJ accepted Mr. Blythe's opinion to the extent that Mr. Blythe found Plaintiff could not return to his past relevant work. (*Id.*)

The ALJ mentioned the medical evidence in her credibility analysis, noting that no treating or examining physician's evidence supported a finding of disability. (*Id.*) Thus, the

ALJ gave logical reasons supported by the record to find Plaintiff's statements that he was unable to work because of his hearing loss not entirely credible.

Plaintiff also contends that the ALJ disregarded information provided by Plaintiff's former supervisors, Daniel Goulet and Steven Pettinelli, and by Plaintiff's wife. (Doc. No. 11 at 8.) However, the record reflects that the ALJ specifically discussed Plaintiff's managers' statements and found, given the record as a whole, their statements were an extension of the Plaintiff's own statements, and their statements clearly failed to outweigh the other elements of the record that the ALJ found to be adverse to the plaintiff. (*Id.* at 22.) The ALJ specifically discussed Plaintiff's wife's testimony that Plaintiff could not hear the doorbell or get messages off their answering machine and that they had a quiet, controlled environment for eating dinner (*Id.* at 20.) Because the ALJ considered and discussed the lay witness testimony, she was not required to make specific written credibility findings. *See Blea v. Barnhart*, 466 F.3d 903, 914 (10th Cir. 2006). Here, the ALJ considered the entire record and reasonably assessed both Plaintiff's and his lay witnesses' credibility. *See Boucher v. Astrue*, 371 F. App'x 917, 922 (10th Cir. 2010) (ALJ reasonably considered objective and subjective factors and gave supporting reasons for credibility determination).

To the extent Plaintiff asserts the ALJ failed to consider certain evidence, the court finds the ALJ discussed the "uncontroverted evidence [she] [chose] not to rely upon," and she also discussed "significantly probative evidence [she] reject[ed]." *Clifton*, 79 F.3d at 1010. A fair reading of the decision reveals that the ALJ based her credibility finding upon a purported consideration of all the evidence. In fact, the ALJ stated her findings were made "[a]fter a

careful consideration of the entire record." (Doc. No. 5-2 at 19.) Here, the court does not find that the ALJ ignored any of the evidence alleged by Plaintiff.

### 3.     *Testimony of Vocational Rehabilitation Expert*

Plaintiff argues that the ALJ "ignored" testimony elicited on direct and cross-examination from the vocational expert, Mr. Schmidt. (Doc. No. 11 at 10–13.) Plaintiff argues that Mr. Schmidt "conceded that a person in [Plaintiff's] position was either unemployable or devoid of transferable skills." (*Id.* at 11.) However, upon a reading of the entire transcript of Mr. Schmidt's testimony, it is clear that Mr. Schmidt opined Plaintiff would be able to work in a one-to-one, quiet setting as an administrative assistant, a merchandise distributor, or an administrative clerk. (Doc. No. 6-2 at 42–44.) Mr. Schmidt testified that for any of these jobs, there would be no more than a little vocational adjustment in terms of tools, work processes, and work settings. (*Id.* at 45.) Mr. Schmidt also testified that the retail business—the setting in which Plaintiff previously worked—would be the last area to be affected by being replaced with computers and bosses doing their own work. (*Id.* at 47–48.) Mr. Schmidt also testified that there would be an erosion of 30% of available jobs if Plaintiff were not working in retail and if he required face-to-face contact with supervisors. (*Id.* at 46, 51, 52.)

The ALJ considered the testimony of Mr. Schmidt in reaching her decision. For instance, the ALJ noted that Mr. Schmidt "testified that the claimant had acquired the skills specified . . . from his job as a retail sales representative and area retail manager that could transfer to a job as an administrative assistant . . . merchandise distributor . . . and an administrative clerk." (*Id.* at 23–24.) The ALJ also noted that Mr. Schmidt testified that the jobs would be reduced by 30% if

they required communications with supervisors in a quiet setting. (*Id.* at 24.) The ALJ also noted that Plaintiff's attorney asked "excellent questions" of Mr. Schmidt, and that Mr. Schmidt explained that transcribing voice mail messages could be accommodated by turning up the volumes on the phones or by being listened to in a quiet setting. (*Id.*) Mr. Schmidt also explained that Plaintiff would have to have good computer skills to do the jobs, but Plaintiff himself testified he could write a business letter, use email, read Xcel spreadsheets, and forward sales numbers to his salesmen. (*Id.*)

The court finds the ALJ did not ignore the vocational expert's testimony.

### *4.     Consideration of Plaintiff's Age and Approaching Retirement Status*

Finally, Plaintiff argues the ALJ did not give proper weight to the fact that Plaintiff was closely approaching retirement age. (Doc. No. 11 at 13–15.) While it is true that the agency has "special rules for persons . . . who are closely approaching retirement age (age 60 or older)," 20 C.F.R. §§ 404.1562(e), 404.1568(d)(4), the regulation refers to an individual who is "closely approaching retirement age (age 60 or older)" and has a severe impairment that limits the individual to "no more than light work." 20 C.F.R. § 404.1568(d)(4). Here, the ALJ found that Plaintiff retained a residual functional capacity to perform the full range of work at all exertional levels. (*See* Doc. No. 5-2 at 19, Finding 5.) Thus, 20 C.F.R. § 404.1568(d)(4) does not apply.

Therefore, based on the foregoing, this court respectfully

**RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply September 12, 2012when the interests of justice require review).

Dated this 12th day of September, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge